IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W.C. McMULLIN, | § | |
| TDCJ #1343042, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-4093 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate W.C. McMullin (TDCJ #1343042, former TDCJ #510869), also known as William Clayton McMullin, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a state court conviction.  The respondent has answered with a motion for summary judgment, arguing that McMullin is not entitled to the relief he seeks. (Docket No. 10).  McMullin has filed a reply.  (Docket No. 12).  After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion, denies the petition, and dismisses this case for reasons that follow.

## I.      BACKGROUND

A local grand jury returned an indictment against McMullin in cause number 1012361, charging him with "unlawfully, intentionally and knowingly" engaging in sexual contact with a child (*i.e.*, indecency with a child) "with the intent to arouse and

gratify his sexual desire."  The State enhanced that indictment with allegations that McMullin had a prior felony conviction for indecency with a child.

At a jury trial held in the 339th District Court of Harris County, Texas, the State presented evidence that McMullin sexually molested a 7-year-old girl who was spending the night of December 11, 2004, at the home of his step-daughter, Tara Crooms.  Crooms testified that McMullin had visited her earlier that day after he asked to store some of his personal property at her home.  Crooms testified that she got up at around 2:00 a.m. during the early morning hours of December 12, 2004 to get one of her children some juice when she discovered McMullin — who was not supposed to be there — laying on the livingroom floor with the victim, who was her niece.  The victim's 5-year-old little brother was sleeping on the nearby couch.  When Crooms confronted McMullin, he jumped up and ran into the bathroom.  She could see that McMullin's pants were half-way down, exposing his buttocks.  The victim told Crooms that "Paw-Paw," referencing McMullin, put his hands down her pants and touched her "private part."  The frightened victim stated that McMullin then made her touch "his private part."  Crooms woke her husband and called the police.  Crooms then called her sister.  McMullin fled the house after having a physical altercation with Crooms's husband.

On cross-examination, Crooms acknowledged that McMullin had arrived at her home early on the day of the incident and that he had already been drinking alcohol that morning.  McMullin was also drinking beer when she saw him again later that day as he retrieved personal items from his apartment to store at her house.  McMullin told Crooms

2

that he was being harassed by "drug dealers" in his neighborhood, who were taking his property.  Crooms acknowledged that McMullin was an out-of-work actor, who had appeared in a movie and on the local stage.  She also acknowledged that McMullin was a Vietnam Veteran who "received disability" and visited the Veteran's Administration ("V.A.") Hospital "often."  Crooms knew that McMullin was on medication, but she could not say whether it was for post-traumatic stress, depression, or mental illness.

The victim, who was 8 years of age at the time of trial, also testified.  She identified McMullin as her "Paw-Paw" and testified that he touched her "private area" in December of 2004.  Using an anatomically correct doll, the victim indicated that McMullin touched her "female sexual organ and genitalia" with his hand.  The victim testified further that, while McMullin was moving his hand around on her private area, he put her hand on "his private part."  McMullin then "grabbed [her] hand and started moving it . . . up and down."  The victim testified that she was scared and that she knew what McMullin was doing was wrong.  The victim testified that McMullin kept touching her in the manner that she described until her "Auntie Tara" walked in to the livingroom and "caught him."  McMullin then jumped up and ran to the restroom.  After the police and the victim's mother arrived, the victim was taken to the Children's Assessment Center.

On cross-examination, the victim acknowledged that she was receiving counseling on a weekly basis at the Children's Assessment Center.  The victim also testified that she saw McMullin drinking alcohol on the day that he molested her and that her parents

believed that he had a "drinking problem."  After the victim finished her testimony, both the State and the defense rested.

During closing argument, defense counsel argued that the evidence showed that McMullin was intoxicated and could not have formed the "conscious" intent to touch the victim improperly.  The jury rejected that argument and found McMullin guilty as charged.

McMullin elected to have the trial court determine his punishment.  During the punishment phase of the trial, McMullin admitted that he had a prior felony conviction for indecency with a child from Galveston County, Texas.[1]  A counselor from the Children's Assessment Center (Gael Thompson), testified that the victim would likely remember the sexual abuse for the rest of her life.  The victim's mother (Tamara Wallace) testified that the molestation had adversely affected her daughter's grades, her relationship with friends, and her personality.  The victim's mother testified that McMullin, who was her step-father, had also fondled her "genital area" and breasts repeatedly from the age of 7 until she turned 12.  She acknowledged on cross-examination that McMullin was "an alcoholic," but that she did not believe he was drinking at the time he was touching her.  The victim's aunt, Tara Crooms, testified that McMullin also began molesting her when she was 7 years of age.  She testified that in

---

[1]    The record shows that McMullin had other felony convictions for kidnapping, attempted rape, and armed robbery in Jackson, Mississippi cause numbers 36813 and 41324. McMullin also had convictions for forgery, theft, assault, and driving while intoxicated in Harris County cause numbers 854774, 9833493, 9509472, and 9320579.  *See Clerk's Record*, at 95.

1995, McMullin attempted to rape Crooms's female roommate.  When she tried to stop him, McMullin struck [her] "upside the head" with his fist.

In an effort to mitigate the potential punishment, defense counsel emphasized that McMullin was a Vietnam Veteran who suffered from anxiety and depression, as well as alcoholism, and that he needed treatment.  The State argued, however, pointed to the evidence showing that McMullin had victimized four children whose lives would be affected by McMullin's actions.  After hearing all of the testimony, the trial court found that McMullin was a "sexual predator" and sentenced him to life imprisonment.

On direct appeal, McMullin complained that (1) the trial court erred in overruling his objection to the prosecutor's closing argument, and (2) he received ineffective assistance of counsel because his attorney failed to object to the prosecutor's improper argument, to inadmissible punishment evidence, or to extraneous victim impact testimony offered during the punishment phase.  The intermediate court of appeals rejected all of his claims in an unpublished opinion.  *See McMullin v. State*, No. 14-05-01243-CR, 2006 WL 3797760 (Tex. App. — Houston [14th Dist.] December 28, 2006).  Thereafter, the Texas Court of Criminal Appeals refused McMullin's petition for discretionary review, which raised only the ineffective-assistance claim concerning counsel's failure to object to extraneous victim impact evidence at punishment.

McMullin challenged his conviction by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.  In that application,

McMullin claimed that he was denied effective assistance of counsel at his trial.   In particular, McMullin complained that his counsel failed to do the following:

(1)   to sufficiently investigate McMullin's competence;

(2)   to sufficiently investigate and pursue an insanity defense;

(3)   to conduct a sufficient and independent pretrial investigation of the facts and the law;

(4)   to allow McMullin to testify on his own behalf;

(5)   to advise him correctly about whether the State would be able to use prior convictions and extraneous offenses against him if he testified;

(6)   to request a hearing to determine the "expert" status of the State's witness (Gael Thompson); and

(7)   to request a "reasonable doubt instruction" regarding extraneous offenses introduced at the punishment phase of the trial.

In response to this application, the State provided information showing that McMullin's trial attorney (Kenneth W. Smith) was disabled and had been confined to an assisted living facility since at least January 2009.[2]   As a result of his disability, the State Bar of Texas entered an "agreed judgment" against Smith for the indefinite suspension of his law license.   Because the nature of his disability affected his capacity to recall events, Smith was unable to respond or to provide an affidavit regarding his representation of McMullin at the trial in 2005.   The State argued, nevertheless, that the record adequately refuted McMullin's ineffective-assistance claims.

---

[2]   The record does not disclose the precise nature of Smith's disability.

6

After considering all of the pleadings and evidence in the record, the state habeas corpus court found that Smith had been suspended from the practice of law based on the existence of a disability and, as a result that disability, was unable to remember the details of his representation of McMullin.   The state habeas corpus court found, nevertheless, that McMullin failed to demonstrate a valid claim for ineffective assistance of counsel and recommended that his habeas application be denied.   The Texas Court of Criminal Appeals agreed and denied McMullin's application, without a written order or a hearing, based on the trial court's findings.   *See Ex parte McMullin*, No. 70,913-03 (Tex. Crim. App. Sept. 22, 2010).[3]

McMullin, who remains in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), now challenges his conviction under 28 U.S.C. § 2254.   According to his petition and attached memorandum, McMullin contends that he is entitled to relief because he was denied effective assistance of counsel at his trial.   In particular, McMullin complains that his attorney was deficient for the following reasons:

---

[3]    McMullin filed his state habeas corpus application with the trial court on March 31, 2008. McMullin filed two applications for a writ of mandamus complaining of delay on state habeas corpus review.   McMullin filed his first motion for leave to file a writ of mandamus against the trial court on October 21, 2008, which the Texas Court of Criminal Appeals denied on November 26, 2008.   *See Ex parte McMullin*, No. 70,913-01. McMullin filed a second motion for leave to file a writ of mandamus against the trial court on July 6, 2010, which the Texas Court of Criminal Appeals denied on August 11, 2010. *See Ex parte McMullin*, No. 70,913-02.

(1) he failed to conduct a pretrial investigation the defense of insanity, diminished capacity, or involuntary intoxication;

(2) he failed to subpoena medical records from the V.A. Hospital;

(3) he failed to review records from the V.A. Hospital that were in the prosecutor's file;

(4) he failed to interview and subpoena physicians from the V.A. Hospital;

(5) he failed to subject the prosecutor's case to meaningful adversarial testing by abandoning McMullin's only viable defense;

(6) he failed to provide the county's psychiatrist with McMullin's medical records from the V.A. Hospital to assist with making a sanity determination;

(7) he failed to file a motion to allow McMullin to testify free from impeachment;

(8) he failed to  inform McMullin that he had a right to testify;

(9) he provided "erroneous legal advice" by advising him that his prior convictions and extraneous offenses could be introduced if he testified;

(10) counsel's ability was impaired by his own "mental disordered illness";

(11) he failed to have another attorney sit second chair; and

(12) he filed a motion to dismiss citing intoxication as the defense.

(Docket No. 1).  The respondent has filed a motion for summary judgment arguing that several of McMullin's claims (claims 6, 9, and 12) are procedurally barred.  (Docket No. 10). The respondent argues further that all of McMullin's claims are without merit and

that his petition must be denied. The parties' contentions are discussed further below under the governing federal habeas corpus standard of review.

## II.   STANDARD OF REVIEW

Motions for summary judgment are typically governed by Rule 56 of the Federal Rules of Civil Procedure.  In this instance, the respondent's summary-judgment motion must be determined in compliance with the federal habeas corpus statutes.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  To the extent that the petitioner's claims were "adjudicated on the merits" in state court, the AEDPA standard found at 28 U.S.C. § 2254(d) applies.[4]

Claims presenting pure questions of law and mixed questions of law and fact are governed by 28 U.S.C. § 2254(d)(1), which precludes habeas relief unless a petitioner demonstrates that the state court's decision to deny a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[4]      In addition, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).   A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).   A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005).   Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.

The Supreme Court has clarified that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398 (2011).   Additional limitations on federal review apply.   A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).   This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).   Where pure questions of fact are concerned, a petitioner is not entitled to relief unless he demonstrates that the state court's decision was "based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see also Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008).

As this deferential standard reflects, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted). In that respect, the AEDPA standard "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011). The Supreme Court has underscored the extent of this deferential standard:

> [28 U.S.C. § 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87. The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 7 (2002); *see also Richter*, — U.S. —, 131

S. Ct. at 785 (confirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"). Thus, a federal habeas corpus court's inquiry is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). The petitioner's claims are examined below under the applicable legal standard.

## III.   DISCUSSION

As outlined above, McMullin raises twelve discrete allegations of ineffective-assistance against the attorney who represented him at trial. The respondent notes that several claims (claims 6, 9, and 12) were not properly raised and adjudicated on the merits in state court. The respondent argues, therefore, that these claims are unexhausted and barred by the doctrine of procedural default. The respondent notes further that, of the properly exhausted ineffective-assistance claims, several of McMullin's allegations (claims 1, 2, 3, 10, and 11) are conclusory and subject to dismissal for failure to articulate a claim. The respondent argues that the remaining claims (claims 4, 5, 7, and 8) are without merit. These arguments are addressed in turn below under the appropriate legal standard.

### A.   Doctrine of Procedural Default

The respondent notes, at the outset, that several of McMullin's ineffective-assistance claims (claims 6, 9, and 12) were not properly presented in state court. The respondent argues, therefore, that McMullin did not exhaust his state court remedies with respect to these allegations and that federal habeas corpus review is barred by the

doctrine of procedural default.  The record confirms that McMullin did not properly present claims 6, 9, or 12 in compliance with state procedures and that these claims were not adjudicated on the merits, which constitutes a procedural default for reasons discussed briefly below.

### 1.    Exhaustion

The federal habeas corpus scheme of review requires petitioners to first present their claims in state court and to exhaust all state court remedies through proper adjudication on the merits.  *See* 28 U.S.C. § 2254(b).  "To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal claim to the highest state court." *Ries v. Quarterman*, 522 F.3d 517, 523 (5th Cir. 2008).  If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state-law ground.  *Cone v. Bell*, ─ U.S. ─, 129 S. Ct. 1769, 1780 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  The doctrine of procedural default also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  *See Cone*, ─ U.S. ─, 129 S. Ct. at 1780 (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and

frustrates the State's ability to honor his constitutional rights") (quoting *Coleman*, 501 U.S. at 732).

The record reflects that, although McMullin raised several allegations of ineffective-assistance on direct appeal and state habeas corpus review, he did not include the allegations found in claims 6, 9, and 12.  McMullin concedes that he did not raise these claims on direct appeal or in his state habeas application.  (Docket No. 12, at 3-9). McMullin insists that he presented them in a set of objections that he filed with the Texas Court of Criminal Appeals after the state habeas corpus court had already entered its findings of fact and conclusions of law.  (*Id.*).  McMullin's failure to present these claims in his original or amended application for relief, however, deprived the state habeas corpus court of the opportunity to consider them or make appropriate findings. As a result, these claims were not exhausted or adjudicated on the merits in state court.  *See Cone*, ─ U.S. ─, 129 S. Ct. at 1780; *see also Jones v. Jones*, 163 F.3d 285, 296-98 (5th Cir. 1998) (holding that, where a petitioner lodges multiple claims for ineffective assistance of counsel, each distinct allegation of ineffective assistance must be exhausted).

McMullin provides no explanation for his failure to raise claims 6, 9, and 12.  As the respondent correctly notes, McMullin's failure to exhaust his state court remedies results in a procedural default.  It is well established that "[i]f a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has

been a procedural default for purposes of federal habeas corpus relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2000) (citing *Coleman*, 501 U.S. at 735 n.1, and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)).   McMullin's unexhausted claims could have been raised in his state habeas corpus application.   Accordingly, a successive petition would be barred by the Texas abuse-of-the-writ statute.   *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a).   Because Texas would likely bar another habeas corpus application by the petitioner on this subject, this default represents an adequate state procedural ground which, in turn, bars federal review of his claims unless an exception applies.   *Finley*, 243 F.3d at 220 (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)).

### 2.      Exceptions to the Procedural Bar

Where a petitioner has procedurally defaulted on a claim in state court, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for

15

the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).  Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different.  *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000) (citing *Strickler v. Green*, 527 U.S. 263, 119 S. Ct. 1936, 1952 (1999)).

McMullin does not attempt to show that the fundamental-miscarriage-of-justice exception applies in this case.  *See, e.g., Dretke v. Haley*, 541 U.S. 386, 393 (2004) (noting that this narrow exception applies in the non-capital context only "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense").  Nor does he attempt to show cause for his default. Even if McMullin were to establish cause, he does not demonstrate the requisite prejudice in that he does allege or show that his underlying defaulted claims would have been successful.  *See Barrientes*, 221 F.3d at 769.  In that respect, McMullin does not show that, if they had been available, medical records from the Veteran's Administration would have shown that he was insane (claim 6).[5]  McMullin does not show that his counsel was deficient for failing to file a motion in limine to allow him to be free from impeachment

---

[5]     The record shows that McMullin's sanity and competency were evaluated prior to trial. *See Clerk's Record*, at 160-65.  The licensed psychologist who examined McMullin determined that he was both sane and competent to stand trial.  *See id.* McMullin, who was reportedly suffering from anxiety, depression, and alcoholism, does not allege any facts or present any proof showing that he was legally insane at the time of the offense or that he was incompetent to stand trial.

or that, if one had been filed, the trial court would have granted it (claim 9).[6] Finally, McMullin does not demonstrate that his counsel was deficient for failing to file a motion to dismiss the indictment based on the defense of intoxication (claim 12).[7] Because McMullin fails to meet an exception to the doctrine of procedural default, these claims are barred from further review and must be dismissed. McMullin's remaining claims are examined below under the legal standard that governs claims for ineffective assistance of counsel.

**B.      Ineffective Assistance of Counsel**

Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

---

[6]      In fact, the record confirms that defense counsel filed a motion in limine to restrict reference to inadmissible evidence, including mention of McMullin's prior felony convictions. *See Clerk's Record*, at 134-35. McMullin does not otherwise show that, if he had elected to testify, he would have been immune to impeachment.

[7]      The record shows that McMullin filed one on his own behalf. *See Clerk's Record* at 55-54. It is well established, however, that intoxication is not a defense to the commission of a crime. *See* TEX. PENAL CODE § 8.04(a) (voluntary intoxication is not a defense); *see also Hawkins v. State*, 605 S.W.2d 586, 589 (Tex. Crim. App. 1980) ("[E]vidence of [defendant's] intoxication, if any, does not negate the elements of intent or knowledge.") (citations omitted).

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.   Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.   To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id* at 694. "A reasonable probability" requires "a 'substantial' not just a 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 791 (2011)).

On state habeas corpus review, McMullin raised several of the same claims that he presents in his federal habeas corpus petition (claims 1-5, 7-8, 10-11).   After considering all of the pleadings and official court records, the state habeas corpus court rejected McMullin's allegations of ineffective-assistance under the governing *Strickland* standard. *See Ex parte McMullin*, No. 70,913-03 at 162-63.   Because McMullin repeats several of his ineffective-assistance claims on federal habeas corpus review, the central question is not whether this Court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable ─ a substantially higher standard.'" *Knowles v. Mirzayance*, ─ U.S. ─, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).   In addition, "because the

18

*Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 129 S. Ct. at 1420.  Thus, this standard is "doubly deferential" on habeas corpus review.  *Id.*; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).  McMullin fails to show that the state court's decision was unreasonable under this doubly deferential standard for reasons outlined briefly below.

### 1.    Claims 1, 2, 3, 10, and 11

The respondent contends that several of McMullin's allegations of ineffectiveness (claims 1, 2, 3, 10, and 11) are conclusory and must be dismissed for failure to state a claim.   Those claims include McMullin's allegations that his counsel failed to conduct an adequate pretrial investigation of his sanity or competency, that his counsel failed to obtain or review medical records from the V.A. Hospital, that his counsel was impaired by his own "mental disordered illness," and that counsel should have requested another attorney to sit second chair at the trial.  The state habeas corpus court found that defense counsel obtained competency and sanity evaluations for McMullin, that defense counsel filed many other motions on McMullin's behalf, and that McMullin did not otherwise show that his counsel failed to fully investigate or prepare for trial.  *See Ex parte McMullin*, No. 70,913-03 at 161.

McMullin does not dispute any of these findings, which are presumed correct for purposes of federal habeas corpus review.  *See* 28 U.S.C. § 2254(e)(1).  The record

contains separate competency and sanity evaluations by a licensed psychologist, along with numerous motions filed by defense counsel on McMullin's behalf.  *See Clerk's Record*, at 43, 99, 103, 114, 118, 121, 124, 129, 134, 138, 144, 145, 160-65, 180.  The transcript of trial proceedings further shows that defense counsel thoughtfully cross-examined the State's witnesses, including the victim, and presented a cogent argument in defense of his client.  This record, which shows that defense counsel capably represented McMullin throughout the trial, contains no evidence that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  *See Strickland*, 466 U.S. at 687.  Thus, the record supports the state court's fact findings.

Likewise, McMullin does not overcome the "strong presumption" that counsel's performance was within the "wide range of reasonable professional assistance."  *Coble v. Quarterman*, 496 F.3d 430, 435 (5th Cir. 2007) (quoting *Strickland*, 466 U.S. at 689).  In that respect, McMullin does not allege specific facts demonstrating that his counsel was deficient for failing to investigate or prepare as alleged in claims 1, 2, and 3.  Nor does McMullin provide any details establishing that defense counsel was mentally unfit at the time of his trial in December of 2005, such that the assistance of additional counsel was needed as alleged in claims 10 and 11.[8]  The Fifth Circuit has made clear that conclusory ineffective-assistance claims of the type made by McMullin do not state a claim and do not merit federal habeas corpus review, much less relief.  *See, e.g.*, *Collier v. Cockrell*,

---

[8]    It bears noting that the trial transcript reflects that Smith had the assistance of a paralegal, who was present at counsel table during the trial.  *See, e.g., Court Reporter's Record*, vol. 3, at 128.

300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)), *cert. denied*, 537 U.S. 1084 (2002); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).   Alternatively, McMullin does not allege facts showing that the state court's decision to reject these claims was objectively unreasonable.  Therefore, the respondent is entitled to summary judgment on this issue.

### 2.   Failure to Call Witnesses (Claim 4)

McMullin complains that his counsel failed to interview the following physicians who treated him at the V.A. Hospital: Psychiatrist Annapurni Teague, Psychiatrist Patsy A. Williams, and Dr. R. Harley.  McMullin claims that these physicians would have testified concerning his "history of mental disorders characterized by episodes of severe depression, uncontrollable anxiety, hallucinations, . . . blackouts, memory loss, alcoholism, and fantasies."  McMullin insists that testimony from these physicians would have shown that he was insane when the offense was committed and, therefore, that his counsel was deficient for failing to call these physicians as witnesses at his trial.

The Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review "because allegations of what a witness would

have testified are largely speculative." *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir.

2007) (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v.

United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  "Where the only evidence of a missing

witnesses' testimony is from the defendant, this Court views claims of ineffective

assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001)

(citations and quotations omitted).  To demonstrate the required *Strickland* prejudice on a

claim of ineffective assistance in this context, a petitioner "must show not only that [the]

testimony would have been favorable, but also that the witness would have testified at

trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

McMullin does not provide statements from the witnesses or show that they would

have testified on his behalf as indicated.  Even assuming that the witnesses would have

testified, McMullin fails to show that he had a valid defense based on insanity or that

these witnesses would have been allowed to testify at the guilt/innocence phase of the

trial as McMullin maintains.  In that regard, a Texas criminal defendant asserting the

affirmative defense of insanity must prove "that, at the time of the conduct charged, the

actor, as a result of severe mental disease or defect, did not know that his conduct was

wrong." TEX. PENAL CODE § 8.01(a); *Meraz v. State*, 785 S.W.2d 146, 150 (Tex. Crim.

App. 1990).  To succeed on such claim, the defendant must prove by a preponderance of

the evidence that he or she was insane during the commission of the offense. TEX. PENAL

CODE § 2.04; *Martinez v. State*, 867 S.W.2d 30, 33 (Tex. Crim. App. 1993).  McMullin

presented no such proof at the state court level, where the state habeas corpus court had

access to a psychological evaluation of McMullin's sanity prior to trial.  In making that

determination, a licensed psychologist (Dr. Ramon Laval), examined McMullin prior to

trial and found that he did not meet the legal criteria for the defense of insanity:

> Regarding educational background, McMullin stated that he graduated from high school, then attended Mississippi Valley State for one year, joined the Army for three years, and then went to Jackson State where he obtained a Bachelor of Science [degree] in speech and drama.  He indicated that his main line of work has been as an actor and director.  He stated that he has not worked since 1998 and has been on Veteran's Administration "pension" due to problems with depression, anxiety, as well as other medical ailments.

> Mr. McMullin indicated that he is presently not receiving any psychiatric treatment.  Medical records from the Harris County Jail corroborate that Mr. McMullin is not under psychiatric care.  The defendant stated that he has requested Zoloft for depression, a medication that he has taken in the past, but he has not yet met with the psychiatrist.  He reported that he also suffers from "a few minor hallucinations", such as hearing his name being called when nobody else is present or seeing "a shadow on the corner of my eye."

> Mr. McMullin indicated that he was incarcerated on January 5, 2005, and was charged with "indecency with a child."  He indicated that he is accused of sexually molesting his step-daughter's daughter. He explained that the mother of his fourteen year old daughter has two other daughters "that I raised."  He stated that he is accused of molesting one of his step-daughter's nine year old daughter.  It is his understanding that he is accused of "touching her at night in her private."  He remarked that on or about the time of the alleged offense, "I had been drinking excessively and I was on my medication, 800 mg. of Ibuprofen."  He stated that he had not been feeling well because he had had a confrontation with some of his neighbors.  Furthermore, at the time, he was "semi-homeless."  He indicated that all of this had caused him to experience a lot of anxiety and consequently, "I started drinking heavy [sic]."  He stated that he consumed excessive amounts of alcohol for about twelve hours before the alleged offense happened.  It is his understanding that the child's aunt "is the outcry witness."  It is his understanding that the alleged offense took place sometime in December 2004.

Upon evaluation, Mr. McMullin was alert and oriented with respect to place, time, and person.  His speech and thinking process were logical and coherent without evidence of circumstantiality, tangentiality, or lose associations.  He was able to communicate in a clear, organized and goal-directed fashion.   The defendant denied experiencing any type of hallucinations at the time of the evaluation.  Thought content was negative for delusional thinking and paranoid ideations.  His affect was appropriate to the demands of the situation and his mood was stable without evidence of undue feelings of depression, anxiety or agitation.   His cognitive functioning was intact and there were no sights of significant decline in his attention, concentration, or memory functions.

In conclusion, the results of this evaluation indicate that Mr. McMullin does not meet the criteria for the insanity defense.   The information available to this examiner indicates that other than the possible effects of alcohol, the defendant was not suffering from symptoms of a mental disease or a mental defect of the type or degree which would have rendered him unable to know the difference between right or wrong on or about the time of the alleged offense.  Mr. McMullin would have been able to know that the alleged criminal activity with which he is currently charged was wrong.  Therefore, Mr. McMullin should be considered to have been **Sane** on or about the time the offense occurred.

*Ex parte McMullin*, No. 70,913-03 at 157-58.  The state habeas corpus court found that, based on the evaluation conducted by Dr. Laval, McMullin was "legally sane at the time of the offense in the primary case." *Id.* at 161.

McMullin does not present any evidence to the contradict Dr. Laval's findings and does not allege facts showing that he was legally insane at the time of the offense.  At most, McMullin reports that he suffered from anxiety, depression, and chronic alcoholism, which caused him to become so intoxicated that he blacked out.  The trial record, which is summarized above, confirms that McMullin's defense counsel elicited this same information before the jury during his cross-examination at the guilt/innocence

24

phase of the trial.  To the extent that McMullin maintains that he was insane because he was highly intoxicated at the time of the offense, voluntary intoxication is not a defense to the commission of a crime.  *See* TEX. PENAL CODE § 8.04(a).  Likewise, "[e]vidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried."  *Id.* at § 8.04(b). McMullin does not show that his counsel was deficient for failing to present testimony from his physicians at the V.A. Hospital in an effort to prove that he was insane and could not be held liable or that, but for any shortcoming by his counsel, the result of the proceeding would have been different.  McMullin fails to show that the state court's decision to reject this claim was objectively unreasonable under the circumstances. Accordingly, he is not entitled to relief on this claim.

### 3.        Failure to Raise a Viable Defense (Claim 5)

McMullin complains that his counsel was deficient because he failed to assert the defense of involuntary intoxication or insanity.  As outlined above, McMullin does not establish that he had a valid defense of insanity to assert.  Instead, McMullin appears to argue that, as a chronic alcoholic, he was compelled to drink and therefore "involuntarily intoxicated" on the day of the offense.  This claim is without merit.

McMullin, who admits drinking heavily on the day in question, does not allege facts showing that his intoxication was involuntary in nature or that he was eligible to assert this defense as a matter of law.  In that respect, Texas law recognizes that involuntary intoxication is a defense to criminal culpability when it is shown that:

> (1)    the accused has exercised no independent judgment or volition in taking the intoxicant; and
>
> (2)    as a result of his intoxication the accused did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

*Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim. App. 1979).  Because the record shows that McMullin was drinking voluntarily throughout the day in question, *see Court Reporter's Record*, vol, 3, at 37, 59-60, 119, he cannot meet the first criteria.  Likewise, because the record reflects that McMullin ran from the livingroom when Tara Crooms caught him in the act of molesting her niece, *see Court Reporter's Record*, vol. 3, at 44-45, he cannot show that he did not know his conduct was wrong and he cannot satisfy the second criteria.

Based on this record, McMullin fails to show that his counsel had, but failed to raise, a valid argument or defense on his behalf.  Absent a showing that counsel failed to raise a meritorious argument and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice.  *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted);  *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not

required to engage in the filing of futile motions."). McMullin fails to show that the state court's decision to reject this claim was objectively unreasonable under the circumstances. Accordingly, he is not entitled to relief on this claim.

### 4.    McMullin's Right to Testify (Claims 7 and 8)

McMullin raises two related, but inconsistent allegations concerning his counsel's performance in connection with his right to testify on his own behalf at trial. McMullin complains that his counsel was deficient because he failed to advise him of his right to testify. McMullin also claims that his counsel advised him erroneously that, if he chose to testify, his prior convictions and extraneous offenses could be introduced. The claims are without merit.

A criminal defendant has a fundamental constitutional right to testify on his own behalf. *See Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (citation omitted). This right is granted to the defendant personally and not to his counsel. *See id*. The Fifth Circuit has recognized that a defendant may waive his right to testify, and that defendants frequently do so on the advice of counsel. *See id*. Thus, there is no violation of the right to testify where the defendant merely acquiesced during trial to his attorney's recommendation that he not testify — even if the defendant decides later, in hindsight, that he should have testified. *See id*. Instead, a violation of this right occurs only if the "final decision that [the defendant] would not testify was made against his will." *Id.* (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990)).

The state habeas corpus court found McMullin's first allegation (that his attorney failed to advise him about his right to testify) "unpersuasive," and rejected this claim after noting that McMullin was going to testify during the punishment phase of the trial, but "changed his mind about that" after both of his step-daughters testified about being repeatedly molested by him while they were young. *See Ex parte McMullin*, No. 70,913-03 at 161-62 (citing *Court Reporter's Record*, vol. 4, at 69-70). The state habeas corpus court implicitly found, therefore, that McMullin knew he had a right to testify, but elected not to do so. *See id.*

The state habeas corpus court found further that, in light of McMullin's lengthy criminal record of prior convictions and extraneous offenses, counsel's advice regarding the risk of testifying was sound:

> 9.  The Court finds, based on the appellate record, that the State gave notice prior to trial that it intended to introduce evidence of numerous prior convictions and extraneous offenses, including a prior conviction for the felony offense of indecency with a child in 1989; multiple acts of indecency with a child against his step-daughter Tamara Wallace during the 1970's and 1980's; multiple acts of indecency with a child and sexual assault of a child against his step daughter [Tara] Crooms during the 1970's and 1980's; indecency with a child and attempted aggravated sexual assault of a child in 1987 against [L.S.] in Galveston County; kidnapping and rape in 1983 against Kimberly Woods in Mississippi; as well as prior convictions for forgery, theft, assault on a female, and armed robbery. [*Clerk's Record*, at 94-95; *Court Reporter's Record*, vol. 4, at 3].

> 10. Because it is likely that [McMullin's] testimony would have opened the door to evidence of [McMullin's] numerous prior convictions and extraneous offenses, [McMullin] fails to

> show a reasonable probability that, but for his failure to testify, he would not have been found guilty in the primary case.

*Ex parte McMullin*, No. 70,913-03 at 162.  The state habeas corpus court concluded, therefore, that McMullin was not denied his right to testify at trial as a result of his counsel's advice.  *Id.*

McMullin does not allege that he was unaware of his right to testify.  Instead, as the pleadings reflect, McMullin chose not to testify in this case after consulting with his defense counsel.  To the extent that McMullin did not take the witness stand based on his counsel's advice, he cannot show that he was denied his constitutional right to testify.  *See Jordan*, 34 F.3d at 312.  Because it is undisputed that McMullin had a lengthy criminal record that could have been used to impeach his credibility, he does not demonstrate that his counsel's advice with regard to this issue was constitutionally deficient.

Even assuming that counsel was somehow deficient for interfering with McMullin's right to testify, and the record does not disclose any such deficiency, McMullin fails to demonstrate actual prejudice.  McMullin states that he wanted the jury to hear "his side of the story that at the time of the offense" he and his step-daughter (Tara Crooms) had a "healthy father-daughter relationship," rebutting her testimony that he was "not always welcomed at her residence."  (Docket No. 2, at 19).  McMullin also wanted the jury to be aware that his heavy drinking was not voluntary, but motivated by a "severe mental disorder" and "chronic disease of alcoholism." (*Id.*).  As the respondent correctly

notes, testimony of this sort would certainly have opened the door for the State to cross-examine him about his prior felony conviction for indecency with a child and the extraneous offenses perpetrated against Tara Crooms and his other step-daughter.  *See* Tex. R. Evid. 404(b) & 609(a); *see also Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. Crim. App. 1990); *Albrecht v. State*, 486 S.W.2d 97, 99 (Tex. Crim. App. 1972). The testimony also would have been admissible to challenge his credibility.  *See, e.g., Polk v. State*, 865 S.W.2d 627, 630-31 (Tex. App. — Fort Worth 1993, pet. ref'd) (explaining that evidence of remote convictions are admissible to impeach credibility under certain circumstances, such as where there is a similarity between the past crime and the offense being prosecuted) (citing *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992)).

Although McMullin argues to the contrary, he provides no authority or other support showing that his prior convictions involving children could not have been used against him.   Based on the strength of the State's case against him, McMullin undoubtedly would have faced rigorous cross-examination from the prosecutor about his actions and his prior record of improper sexual contact with children.   In light of the evidence against him, McMullin fails to show how his testimony would have made a difference in the outcome of the proceedings.  *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) ("Considering the overwhelming evidence of [defendant's] guilt, we cannot conceive of anything [defendant] could have said that would have provided *any* reasonable possibility of a different outcome."); *see also United States v. Mullins*, 315

F.3d 449, 456-57 (5th Cir. 2002) (holding that, even where a counsel's performance was found deficient for failing to honor his client's request to testify, there was no valid ineffective-assistance claim absent a showing of actual prejudice); *United States v. Willis*, 273 F.3d 592, 598-99 (5th Cir. 2002) (same).

McMullin has not established that his counsel's performance was deficient with regard to his right to testify or that he was actually prejudiced as a result. Absent a showing of deficient performance or actual prejudice, McMullin fails to demonstrate a valid claim of ineffective assistance of counsel in connection with his right to testify. To the extent that the state court rejected his claim, McMullin does not show that this decision was unreasonable. Accordingly, he is not entitled to federal habeas corpus relief on this claim. Because McMullin has failed to establish a valid claim in this case, his petition must be dismissed.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El*, 537 U.S. at 336.   Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).   The Court concludes that reasonable jurists would not debate whether the petition should have been resolved in a different manner.   Likewise, the Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim of the denial of a constitutional right.   Therefore, a certificate of appealability will not issue.

V.      **CONCLUSION AND ORDER**

Based on the foregoing, the court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Docket No. 10) is **GRANTED**.

2.      The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 8th day of August, 2011.

_____
Kenneth M. Hoyt
United States District Judge

33